Filed 1/4/21  P. v. Faber CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>SCOTT ANDREW FABER,<br><br>    Defendant and Appellant. | A159465<br><br>(Mendocino County Super. Ct.<br>No. SCUKCRCR19330191) |

Scott Andrew Faber was convicted pursuant to a plea agreement of second degree burglary and misdemeanor petty theft.  These two convictions were also the basis for probation violations in two other cases.  Appellant now appeals, contending the trial court abused its discretion when it denied his request for a split sentence and instead sentenced him to a straight sentence of three years in local custody.  For the reasons discussed in this opinion, we shall reject this claim and affirm the judgment.

**PROCEDURAL BACKGROUND**

*Prior Relevant Cases*

On January 3, 2019, appellant was charged by criminal complaint in case No. MCUK-CRNT-19-30030-001 (case No. 30030)[1] with misdemeanor

_____

[1] On August 28, 2020, we granted appellant's unopposed request for judicial notice of the misdemeanor complaint in case No. 30030 and the felony complaint in case No. case No. SCUK-CRCR-19-33019-001 (case No. 33019).

1

trespass (Pen. Code, § 602, subd. (t)(1)).[2]  On January 4, appellant pleaded no contest to the charge, and the court suspended imposition of judgment and placed appellant on 24 months of summary probation.

On March 22, 2019, appellant was charged by criminal complaint in case No. MCUK-CRNT-19-30773-001 (case No. 30773) with misdemeanor identity theft (§ 530.5, subd. (a)); misdemeanor forgery (§ 470, subd. (a)); and five counts of misdemeanor theft of access card (§ 484g).  On March 26, appellant pleaded no contest to the charges and the trial court placed him on summary probation for 36 months.  The court also found appellant in violation of probation in case No. 30030, and revoked and reinstated probation in that case.

Several petitions for revocation of probation were subsequently filed between April and August 2019 in case Nos. 30030 and 30773, alleging, inter alia, failure to obey all laws.  Appellant admitted the violations and probation was reinstated in each case.

### Current Cases

On October 2, 2019, appellant was charged by criminal complaint in case No. MCUK-CRNT-19-32816-001 (case No. 32816) with misdemeanor petty theft (§§ 484, subd. (a), 488, 490.2).

On October 18, 2019, appellant was charged by criminal complaint in case No. 33019 with second degree burglary (§§ 459, 460, subd. (b)).  The complaint also alleged that appellant had served three prior prison terms, pursuant to section 667.5, subdivision (b).

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

As a result of the charges in these two cases, petitions to revoke probation were filed in October 2019 in case Nos. 30030 and 30773, alleging, inter alia, appellant's failure to obey all laws.

On November 14, 2019, appellant entered open pleas in case Nos. 32816 and 33019, pleading no contest to both charges and admitting the three prior prison term allegations. The court found that appellant's pleas were a sufficient factual basis to find that he had violated his probation in case Nos. 30030 and 30773.

At the January 21, 2020 sentencing hearing, the court struck the three prior prison term enhancements, based on the change in the law. (See § 667.5, subd. (b).)[3] Then, following the arguments of counsel, the court denied appellant's request for a split sentence and imposed an upper term of three years in local custody for the second degree burglary conviction in case No. 33019, and a concurrent term of 60 days for the misdemeanor petty theft conviction in case No. 32816. The court also terminated probation in case Nos. 30030 and 30773.

On January 23, 2020, appellant filed a notice of appeal.

## FACTUAL BACKGROUND

The stipulated factual basis for the second degree burglary plea in case No. 33019 was as follows: On October 15, 2019, appellant "broke into Mountain Mike's Pizza, a commercial business, while that business was

---

[3] Under the version of section 667.5 in effect when appellant was charged in this matter, subdivision (b) required trial courts to impose a one-year enhancement for each prior prison term served for any felony. In 2019, the Legislature passed Senate Bill No. 136, which took effect on January 1, 2020, and which made this enhancement inapplicable to appellant. (See § 667.5, subd. (b); Legis. Counsel's Dig., Sen. Bill No. 136 (2019-2020 Reg. Sess.) ch. 590.)

closed. He entered that business with the intent to commit theft and did steal various items, including electronics, tablets, and beer."

The misdemeanor petty theft charge in case No. 32816 was based on the following allegation: On September 2, 2019, appellant took mail, a notebook, and an endorsed check belonging to the victim, all with a value of less than $950.

## DISCUSSION

Appellant contends the court abused its discretion when it denied his request for a split sentence and instead sentenced him to a straight sentence of three years in local custody.

### I. *Trial Court Background*

At the January 21, 2019 sentencing hearing, the court first stated that it did not intend to impose the three prior prison term enhancements, due to the change in the law. (See § 667.5, subd. (b).)

Defense counsel then asked the court to impose the mitigated term and a split sentence, with two-thirds of the sentence to be served on mandatory supervision. This request was based on the fact that appellant entered an early admission with no promises in exchange for that admission, and that he had expressed remorse for his conduct. Counsel also argued that appellant has a serious drug addiction, which had played a role in the burglary, with his addiction driving his criminal behavior. In addition, while in jail, appellant had applied to and been accepted into multiple drug treatment programs. Counsel believed the fact that appellant had opportunities in the past to participate in treatment and had failed, showed how significant his methamphetamine addiction was. Counsel stated that the mitigated term with a longer split sentence was appropriate because appellant wished to

4

participate in an 18-month treatment program to which he had been accepted.

The prosecutor argued that the court should impose the aggravated term and deny the request for a split sentence. The prosecutor agreed with the probation department's analysis that every factor in aggravation relating to appellant applied, including the facts that appellant was on two relatively recent grants of probation at the time he committed the present offense, one of which included seven separate counts of theft related offenses; he had a lengthy prior criminal record, which included four felonies and 26 misdemeanors over the past 20 years; and he had previously violated probation on multiple occasions. Although appellant's early admission of responsibility was a mitigating factor, the prosecutor believed the many aggravating factors outweighed that mitigating factor. Regarding the split sentence, the prosecutor noted that the probation department had initially recommended a split sentence when appellant was facing a six-year sentence, which had included the three years for the prior prison terms. The prosecutor believed that with a longer sentence, a split sentence could be beneficial, but appellant's record and recent poor performance on probation "did not bode well that he would actually follow through with his term of mandatory supervision."

In the presentence report, the probation officer had stated that appellant faced a minimum of six years in local prison, and that "[i]f a split sentence were imposed as recommended (four years confinement and two years on Mandatory Supervision), a balance of 651 actual days of custody would remain as of sentencing." The probation officer believed that "[t]he combination of confinement time, coupled with residential treatment and supervision may reduce the risk of danger [appellant] poses to the

5

community" and encourage him to pay victim restitution. Probation had therefore recommended "a period of long-term confinement coupled with a more modest period of supervision" to give appellant "another opportunity to follow through with his rehabilitation goals."

At the sentencing hearing, however, based on the court's modification of appellant's sentence from six years to three years, coupled with appellant's prior performance on probation, the probation department changed its recommendation to imposition of a straight sentence. Probation would then encourage appellant to seek rehabilitative services once he completed his sentence.

Appellant also addressed the court at the sentencing hearing, apologizing for his conduct that was a result of his drug addiction and stating that he needed help with his addiction for the sake of his family, himself, and the community.

The court first explained its decisions to sentence appellant to the aggravated term on the second degree burglary count, as follows. "I have reviewed the reports, and [appellant], you have one of the longest criminal histories that I have seen here recently. And I do see that some of your prior misdemeanor convictions were drug related. Of the, I believe, 26 misdemeanor convictions, six of them are [for] being under the influence or being in possession of controlled substances. But by far the majority of your criminal convictions, including the felonies are theft offenses, which is what you are being sentenced on in—in the two cases here, one felony and one misdemeanor. And then being resentenced on two probation misdemeanor violations.

"Of the four felonies there was one crime of violence. You went to prison before you were placed on community supervision after being

committed to local prison before. And during those period[s] of incarceration you were offered treatment. [¶] In fact, you got into one of the best treatment programs, Delancey Street, but never completed the program. Apparently you walked away from the program. Apparently you were accepted into and then walked away from both Solidarity House and Victory Outreach. I am not as familiar with Solidarity House, but Victory Outreach is another good program. [¶] . . . [¶]

"When I look at your—the factors that . . . the Rules of Court require that I look at, it's not even close that this is an aggravated sentence given the factors in aggravation versus the factors in mitigation. . . . [¶] But it is clear to this court based on—on those factors that the court is required to consider, including the number of prior convictions, the seriousness of those prior convictions which include reckless evading from a peace officer, and then felony domestic violence, a total of 32 prior convictions, and the fact you were on probation in two misdemeanors and had another misdemeanor out there for theft, that this—that the factors in aggravation outweigh . . . the sole factor in mitigation[,] that you do have a long-standing methamphetamine addiction. . . .

"So I am going to impose the aggravated sentence of three years and that will be served in local prison, pursuant to [section 1170, subdivision (h)]."

The court then addressed appellant's request for a split sentence, as follows. "I am not totally convinced the most recent offense, [appellant], was based on a drug addiction. What you stole were electronics, laptops or tablets, alcohol and beer also. But you have property, at least according to the declarations, that if drug addi[c]tion were your reason for stealing that you could have sold as well. You have a couple of Harleys and other things

7

that—that also could address a drug addiction.  So I think, just to be candid . . . that you have adopted a criminal lifestyle, that you like stealing things and it's your history.  [¶] . . . .  I want you to get help.  I don't want you to be in this position.  You are right. . . .  Your family needs a person who is going to provide [for] them consistently and set a good example.  You are 40 years old.  If you are going to change, you have had the opportunities.  You were given the programs.  And I think that this is just who you have decided you want to be.  It breaks my heart, probably breaks your family's heart.  But you are a smart guy, [appellant].  You know what to do, you know how to change.  You know how to take advantage of things and I don't think you want to at this point.

"So I am going to deny a split and make this a straight sentence. . . ."

## II. *Legal Analysis*

### A. *Governing Law*

Under the Criminal Justice Realignment Act of 2011 (Realignment Act), " 'qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison.  [Citation.]  Trial courts have discretion to commit the defendant to county jail for a full term in custody or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision.' [Citation.]" (*People v. Camp* (2015) 233 Cal.App.4th 461, 467; accord, *People v. Catalan* (2014) 228 Cal.App.4th 173, 178.)  "Split sentences are the preferred disposition in eligible cases because they provide released prisoners with close supervision and supportive services designed to substantially reduce the risk of recidivism." (*People v. Arce* (2017) 11 Cal.App.5th 613, 616; see § 1170, subd. (h)(5)(A).)

Subdivision (h) of section 1170 provides in relevant part:

"(2) . . . a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense.  [¶] . . . [¶]

"(5)(A) Unless the court finds, in the interests of justice, that it is not appropriate in a particular case, the court, when imposing a sentence pursuant to paragraph (1) or (2), shall suspend execution of a concluding portion of the term for a period selected at the court's discretion.

"(B) The portion of a defendant's sentenced term that is suspended pursuant to this paragraph shall be known as mandatory supervision . . . ." (§ 1170, subd. (h)(2), (5).)[4]

California Rules of Court, rule 4.415[5] addresses the Realignment Act's presumption in favor of a split sentence in appropriate cases and sets forth certain criteria a court may consider in determining whether to deny such a sentence.  Rule 4.415 provides in relevant part:

"**(a) Presumption**

"Except where the defendant is statutorily ineligible for suspension of any part of the sentence, when imposing a term of imprisonment in county jail under section 1170(h), the court must suspend execution of a concluding portion of the term to be served as a period of mandatory supervision unless the court finds, in the interests of justice, that mandatory supervision is not appropriate in a particular case.  Because section 1170(h)(5)(A) establishes a statutory presumption in favor of the imposition of a period of mandatory

---

[4] Amendments to section 1170, subdivision (h) that took effect after appellant was sentenced in 2019 did not alter these provisions of the statute. (See Stats. 2020, ch. 29, § 14, eff. Aug. 6, 2020.)

[5] All further rule references are to the California Rules of Court.

9

supervision in all applicable cases, denials of a period of mandatory supervision should be limited.

"**(b) Criteria for denying mandatory supervision in the interests of justice**

"In determining that mandatory supervision is not appropriate in the interests of justice under section 1170(h)(5)(A), the court's determination must be based on factors that are specific to a particular case or defendant.

"Factors the court may consider include:

"(1)  Consideration of the balance of custody exposure available after imposition of presentence custody credits;

"(2)  The defendant's present status on probation, mandatory supervision, postrelease community supervision, or parole;

"(3)  Specific factors related to the defendant that indicate a lack of need for treatment or supervision upon release from custody; and

"(4)  Whether the nature, seriousness, or circumstances of the case or the defendant's past performance on supervision substantially outweigh the benefits of supervision in promoting public safety and the defendant's successful reentry into the community upon release from custody.  [¶] . . . [¶]

"**(d)  Statement of reasons for denial of mandatory supervision**

"Notwithstanding rule 4.412(a), when a court denies a period of mandatory supervision in the interests of justice, the court must state the reasons for the denial on the record."  (Rule 4.415(a), (b), (d).)

B.  *The Court's Denial of Appellant's Request for a Split Sentence*

At the sentencing hearing, after discussing the criteria supporting imposition of an aggravated term, the court discussed its reasons for denying appellant's request for a split sentence.  It did not believe that the burglary offense was a result of appellant's methamphetamine addiction, considering

what he stole—which included alcohol and beer—and the fact that he had personal property, including two "Harleys," which he could have sold if he was stealing solely to support his addiction. Based on the evidence in the record, the court expressed its belief that appellant had "adopted a criminal lifestyle" and "like[d] stealing things and it's your history." Appellant's "history" of theft as a criminal lifestyle, to which the court referred, included the facts that he had a total of 32 prior convictions, the vast majority of which were not related to drugs but instead were theft related; that he was currently on probation for two theft-related misdemeanor convictions; and that he had just been convicted of misdemeanor theft.

These were appropriate factors for the court to consider in determining that a split sentence was not in the interests of justice. First, under rule 4.415(b)(2), criteria for denying mandatory supervision include "[t]he defendant's present status on probation." In addition, the court's consideration of appellant's numerous theft-related convictions as an indication that he had adopted a criminal lifestyle beyond the exigencies of his drug addiction was permissible under rule 4.415, given that the factors set forth in that provision are not all inclusive. (See rule 4.415 (b) [court's determination that mandatory supervision is not appropriate "must be based on *factors that are specific to a particular case or defendant*," and "[f]actors the court *may* consider include: [four listed factors]"], italics added; see also rule 4.408(a) ["The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made"].)

The court also based its decision to impose a straight sentence on appellant's previous opportunities to participate in programs and address his

11

addiction: "If you are going to change, you have had the opportunities. You were given the programs. And I think that this is just who you have decided you want to be. . . . You know what to do, you know how to change. You know how to take advantage of things and I don't think you want to at this point." The court had just discussed in more detail these previous "opportunities" and "programs" when it imposed an aggravated sentence, observing that appellant had been "placed on community supervision after being committed to local prison before. And during those period[s] of incarceration you were offered treatment. [¶] In fact, you got into one of the best treatment programs, Delancey Street, but never completed the program. Apparently you walked away from the program. Apparently you were accepted into and then walked away from both Solidarity House and Victory Outreach."

The court reasonably considered appellant's history of repeatedly "walk[ing] away" from treatment programs in determining that a split sentence was not appropriate in this case. (See rule 4.415(4) [criteria for denying mandatory supervision include "[w]hether the . . . defendant's past performance on supervision substantially outweigh the benefits of supervision in promoting public safety and the defendant's successful reentry into the community upon release from custody"].)

Appellant takes particular exception with the court's decision to impose a straight sentence after the probation department changed its recommendation from a split sentence—with "a period of long-term confinement coupled with a more modest period of supervision"—to a straight sentence, based on the fact that appellant was no longer facing a term of six years, once the three one-year prior prison term enhancements were stricken. Instead, probation would encourage him to seek rehabilitative services *after*

12

he completed his custodial sentence. According to appellant, other than the shorter sentence, the same facts existed as when probation had recommended a split sentence, and "it was not appropriate to find him no longer amenable for a split sentence, that would have given him the opportunity to have supervision to ensure success in drug treatment and rehabilitation simply because he was facing a shorter term, with the striking of the prior prison enhancements."

As respondent notes—and as defense counsel acknowledged at the sentencing hearing—the length of time of custody exposure is one of the listed factors the court may consider in determining whether to deny a split sentence in the interests of justice. (Rule 4.415(b)(1) ["Consideration of the balance of custody exposure available after imposition of presentence custody credits"].) The probation department had initially recommended a split sentence based on an assumption that appellant would serve a lengthy amount of time in custody, followed by a modest period of supervision. Once the three years were stricken from appellant's sentence, and considering that he was also entitled to 196 days of custody credits, neither the probation department nor the court was unreasonable in viewing a split sentence— which would require a much shorter time in custody—as inappropriate under the circumstances. (See rule 4.415(b)(1); see also 4.415(b) [court's determination that mandatory supervision is not appropriate must be based on factors specific to the case or the defendant].)

Based on the foregoing, we cannot say that the court abused its broad discretion in determining, in the interests of justice, that a split sentence was not appropriate in the particular circumstances of this case. (See *People v. Camp, supra,* 233 Cal.App.4th at p. 467; *People v. Stuckey* (2009) 175 Cal.App.4th 898, 916 ["What the interests of justice require in a particular

13

case constitutes a question uniquely addressed to the broad judicial discretion of the trial court"]; accord, *People v. Catalan*, *supra*, 228 Cal.App.4th at p. 179; see also § 1170, subd. (h)(5)(A).)

## DISPOSITION

The judgment is affirmed.

_____
Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.

*People v. Faber* (A159465)

15